UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TOMMY LYNN MORRIS, Personal Representative of the Estate of Thomas Lynn Morris, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO. 1:12-cv-00578-SEB-DML ) |
| MID-CENTURY INSURANCE COMPANY and SALVATORE NUZZO, | ) ) ) |
| Defendants. | ) ) |

# Order on Plaintiff's Motion to Remand

## Background

In 2004, Daemen Sampson was driving his car in Indiana when it was struck by an automobile driven by Marcia Flaherty. *Morris v. Mid-Century Ins. Co.*, No. 4:11-cv-1836, 2012 WL 1551269 at *1 (N.D. Ohio Apr. 30, 2012) (Dkt. 23). Thomas Lynn Morris, a passenger in Sampson's car, was killed. Sampson was insured by defendant Mid-Century Insurance Company. Morris's estate (hereafter, "Morris") made a claim against the insurance policy for $50,000, and defendant Salvatore Nuzzo adjusted the claim on Mid-Century's behalf. The claim was not settled, and Morris filed a wrongful death suit in Indiana state court against Sampson. That case went to trial and a jury returned a verdict for Morris and against Sampson of approximately $1.2 million. Sampson executed an assignment of rights to Morris under which Morris agreed not to pursue collection against Sampson personally in exchange for Sampson's claims against his insurer, Mid-Century, for bad faith. *Id.*

Litigation of those bad faith claims arrived in this court following a long, convoluted path. After Sampson assigned his bad faith claim against Mid-Century to Morris—but before

Morris filed that claim—Mid-Century filed suit in Indiana state court in July 2010, seeking a declaratory judgment that it had acted in good faith in dealing with its insured, Sampson. *See Mid-Century Ins. Co. v. Estate of Morris,* 966 N.E.2d 681, 684-85 (Ind. Ct. App. 2012). Later, in February 2011, Morris filed a bad faith claim against Mid-Century (but not Mr. Nuzzo) in California state court. The California court dismissed Morris's suit without prejudice on *forum non conveniens* grounds, finding that the parties' dispute—concerning responsibility, under an insurance contract delivered and performed in Indiana, for payment of a judgment entered by an Indiana court arising out of a car accident occurring in Indiana involving Indiana citizens—should be litigated in Indiana. The only connection with California is that Mid-Century is a California resident.[1]  *See id.* at 685-86 and Dkts. 10-6 and 10-7 (California court orders).

The Indiana trial court declined to exercise jurisdiction under Indiana's Declaratory Judgment Act over Mid-Century's action, dismissing it without prejudice, *Mid-Century,* 966 N.E.2d at 686-87, and its decision was affirmed on appeal. *Id.* The Indiana Court of Appeals determined that the trial court had not abused its discretion in deciding that Mid-Century's suit to "preemptively defend against a claim of breach of duty of good faith" was not appropriate under the Declaratory Judgment Act. *Id.* at 689. The Indiana Supreme Court recently denied Mid-Century's petition to transfer.

In the meantime, on August 1, 2011, Morris (a citizen of Indiana) decided not to follow the rationale of the California state court and, rather than filing his bad faith action in Indiana, filed it in *Ohio* state court. The complaint asserts claims against defendant Nuzzo (the insurance adjuster) and Mid-Century for breach of the insurance contract and for their bad faith failure to defend and settle the claims against Sampson, the insured. *See* Dkt. 1-2. Mr. Nuzzo is a citizen

---

[1]    The California litigation was filed in a forum in which the defendant could not remove the case to federal court.

of Ohio and Mid-Century, as noted above, is a citizen of California. *See* Dkt. 1. Mid-Century and

Nuzzo removed the case to the federal district court for the Northern District of Ohio, Dkt. 1, and

within two weeks of removal, Morris filed a motion to remand based on the forum defendant

rule, *i.e.*, that Mr. Nuzzo's Ohio citizenship prevented removal to the Ohio federal court. *See* 28

U.S.C. § 1441(b)(2) (action removable solely on diversity grounds "may not be removed if any

of the parties in interest properly joined and served as defendants is a citizen of the State in

which such action is brought"). The defendants opposed remand, contending that Mr. Nuzzo

was fraudulently joined and his citizenship should be disregarded, thus mooting the forum

defendant rule. *See* Dkt. 8.

At the same time they were defending the propriety of removal, defendants also moved to

dismiss the claim against Mr. Nuzzo or, alternatively, to transfer the case to the Southern District

of Indiana pursuant to 28 U.S.C. § 1404, which permits transfer to another district court "[f]or

the convenience of parties and witnesses, in the interest of justice." *See* Dkt. 9. In an order

entered April 30, 2012, the district court for the Northern District of Ohio granted the motion to

transfer to this district and denied all other pending motions as moot, including Morris's motion

to remand to the Ohio state court. Dkt. 23 at p. 7.

Now before our court, the parties have raised several issues. First, Morris argues that the

Ohio district court's transfer to this district was invalid because the Ohio district court's exercise

of jurisdiction was not proper based on the forum defendant rule. Second, Morris argues that,

even if the transfer were valid, the transfer did not render his motion to remand moot; thus, he

seeks a ruling on his motion to remand to the state court in Ohio in which he filed this case. The

defendants assert that the transfer did, indeed, moot Morris's remand motion, but even if it did

not, remand is not appropriate because Mr. Nuzzo was fraudulently joined and his Ohio

citizenship should be ignored for purposes of the forum defendant rule.  We address these issues below.

**Analysis**

For the reasons explained herein, we conclude:  (1) the Northern District of Ohio *did* have authority to transfer the case to the Southern District of Indiana, as subject matter jurisdiction, personal jurisdiction, and venue were proper in the Ohio district court regardless of whether Mr. Nuzzo's citizenship was considered or ignored; (2) the Northern District of Ohio's transfer did not moot the plaintiff's motion to remand; thus, the motion should be determined on its merits; (3) Mr. Nuzzo was fraudulently joined as a defendant because there is no reasonable possibility or colorable basis for asserting a claim against him under the state law that governs this case; and (4) because defendant Nuzzo was fraudulently joined, his citizenship is to be disregarded;  accordingly, the forum defendant rule does not foreclose removal.  Having concluded that Mr. Nuzzo was fraudulently joined, the claims against him must and shall be dismissed with prejudice.  *See Walton v. Bayer Corp.,* 643 F.3d 994, 1001 (7th Cir. 2011) (fraudulent joinder is ground for dismissing defendant from the lawsuit with prejudice).

1.  **The District Court for the Northern District of Ohio had both subject matter jurisdiction and the power to transfer this case.**

We first address whether the district court for the Northern District of Ohio had the requisite power to transfer the case to our district under 28 U.S.C. § 1404.  There is clear authority that a district court's power to transfer under section 1404 depends on whether it has subject matter jurisdiction, personal jurisdiction over the parties, *and* is a proper venue.  *In re LimitNone, LLC,* 551 F.3d 572, 575-76 (7th Cir. 2008) (transfer under section 1404 presupposes that transferor court was proper venue; if venue was not proper in transferor court, any transfer must proceed under 28 U.S.C. § 1406); *Pittock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir.

1993) ("a transfer under section 1404(a) may not be granted when the district court does not have personal jurisdiction over the defendants"); *Grimsley v. United Engineers & Constructors, Inc.*, 818 F. Supp. 147, 148 (D.S.C. 1993) (when "the court lacks subject matter jurisdiction, it does not have the power to transfer pursuant to § 1404(a)"). *Cf. SongByrd, Inc. v. Estate of Grossman,* 206 F.3d 172, 179 n.9 (2d Cir. 2000) (whether transfer is effected under section 1404(a) or 1406(a), lack of personal jurisdiction can be cured by transfer to district in which personal jurisdiction can be exercised).

No issues relating to personal jurisdiction or venue are raised here;  there is no dispute that defendants Nuzzo and Mid-Century were subject to personal jurisdiction in Ohio and that venue was proper in the Northern District of Ohio.  Morris's argument that the Northern District of Ohio was without power to transfer rests on the assertion that, because of the forum defendant rule, the court lacked subject matter jurisdiction to take any action except to remand.[2]  Notably, Morris has not cited any authority to support this contention.  In any event, its premise erroneous: The forum defendant rule is *not* jurisdictional; it constitutes only a procedural impediment to removal that, unlike a defect in subject matter jurisdiction, a plaintiff can waive. Significantly, the requirements for diversity jurisdiction under 28 U.S.C. § 1332(a) are, and always have been, satisfied here.[3]

---

[2]     The Northern District of Ohio was not required to make findings on or affirmatively determine that it had subject matter jurisdiction before transferring the case.  As the Seventh Circuit ruled in *LimitNone,* a district court is *not* "required to determine its own subject-matter jurisdiction before ordering the case transferred" where its order does not constitute a judgment on the merits of the parties' claims.  551 F.3d at 576-77.

[3]     The parties do not dispute that plaintiff Morris is a citizen of Indiana.  Under 28 U.S.C. § 1332(c)(2), the personal administrator is deemed a citizen of the state of his decedent, which was Indiana.  His citizenship is diverse from the citizenship of both defendant Nuzzo (Ohio) and defendant Mid-Century (California).  They also do not dispute that the amount in controversy exceeds $75,000. Thus, the requirements for diversity jurisdiction are met. *See* 28 U.S.C. § 1332(a) ("The district courts shall have original jurisdiction of all civil actions where

Both the Sixth Circuit and the Seventh Circuit have held that the forum defendant rule does not limit subject matter jurisdiction.[4]  In *Hurley v. Motor Coach Indus., Inc.,* 222 F.3d 377 (7th Cir. 2000), the Seventh Circuit "join[ed] the longstanding line of authority that holds that the forum defendant rule is nonjurisdictional," *id.* at 380, noting that the "overwhelming weight of authority . . . is on the 'nonjurisdictional' side of the debate."  *Id.* at 379.  The Sixth Circuit agrees, having held "that jurisdiction will be retained" in federal court even if  "the case was not technically removable." *Handley-Mack Co. v. Godchaux Sugar Co.*, 2 F.2d 435, 437 (6th Cir. 1924).  *See also Lively v. Wild Oats Markets, Inc.*, 456 F.3d 933, 940 (9th Cir. 2006) (providing detailed analysis supporting conclusion that forum defendant rule is "a non-jurisdictional requirement," a conclusion that "comports with eight of the nine circuits that have addressed this issue").

The facts of the case at bar are similar to those presented in *Hurley*.  There, "the case as it arrived in federal court met every requirement for federal jurisdiction," but it "simply took the wrong path" in getting there. *Hurley*, 222 F.3d at 380.  The improper removal in that case, the court concluded, was therefore a matter of procedure rather "than a matter of jurisdiction." *Id.*  In similar fashion, as described above, the present litigation meets all requirements for federal subject matter jurisdiction, regardless of whether Mr. Nuzzo's citizenship is considered or

---

the matter in controversy exceeds the sum or value of $75,000" and "is between citizens of different States"); *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 553 (2005) (citing *Strawbridge v. Curtiss*, 7 U.S. 267 (1806) (complete diversity is required, in that all plaintiffs must be diverse from all defendants).

[4]     The District Court for the Northern District of Ohio is in the Sixth Circuit and this court is of course in the Seventh Circuit.  When a diversity case is transferred, the transferee court applies the law of the transferor court as to state law issues, *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964), but "the transferee court is usually 'free to decide [federal issues] in the manner it views as correct without deferring to the interpretation of the transferor circuit.'" *McMasters v. United States*, 260 F.3d 814, 819 (7th Cir. 2001) (internal citation omitted).  Here, the court cites to case law from the Sixth *and* Seventh Circuits; nothing indicates a different result if one or the other circuit's law is applied.

ignored. Thus, even if the removal in this litigation is deemed improper, the case simply took the "wrong path" in arriving in federal court, thereby producing merely a procedural—rather than a jurisdictional—defect. But, unlike in *Hurley* where the plaintiff waived the forum defendant rule by not timely moving to remand, Morris's remand motion was timely. *See Hurley,* 222 F.3d at 380 (forum defendant rule designed to preserve a plaintiff's choice of a state forum "under circumstances where it is arguably less urgent to provide a federal forum to prevent prejudice against an out-of-state party. After removal, if the plaintiff wants to remain in state court, she can file a timely motion for remand.")

Thus, although there is no basis for invalidating the Northern District of Ohio's transfer order to this court, the court must next address whether the transfer order precludes determination of Morris's motion to remand on its merits.

**2.   The Northern District of Ohio's transfer to the Southern District of Indiana did not render the plaintiff's motion to remand moot.**

In its transfer order, the Northern District of Ohio denied "as moot" the "motion to remand." *Morris,* 2012 WL 1551269 at *1. As described above, the Northern District's transfer was valid, regardless of whether this court rules that Mr. Nuzzo was fraudulently or properly joined. However, the transfer of a case to another federal district court does not, in itself, moot a timely filed motion to remand. Indeed, transferee courts frequently rule on motions to remand that were filed before transfer. *See, e.g., Ayers v. ConAgra Foods, Inc.,* 2009 WL 982472 at *1 (S.D. Tex. Apr. 9, 2009) (finding "transferee judge certainly has the power to determine the question of remand"); *In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Practices Litig.,* 2008 WL 5450351 at *1 (S.D. Cal. Dec. 30, 2008) (establishing hearing date and briefing schedule for motion to remand after transfer); *In re Professional Hockey Antitrust Litig.,* 369 F. Supp. 1117,

1118 (J.P.M.L. 1974) (stating "the transferee judge has the power to rule on the question of remand").

Moreover, a violation of the forum defendant rule—the basis for the remand motion here—cannot be cured by a transfer. The rule asks whether a defendant's citizenship is that of "the State in which such action *is brought*." 28 U.S.C. § 1441(b)(2). *See also Van Dusen v. Barrack,* 376 U.S. 612, 633-34 and 636-37 (1964) (a transfer under section 1404(a) cannot "defeat the advantages accruing to plaintiffs who have chosen a forum which, although it was inconvenient, was a proper venue"; section 1404(a) "should be regarded as a federal judicial housekeeping measure . . . and generally intended, on the basis of convenience and fairness, simply to authorize a change of courtrooms").

This court assumes that the characterization by the Northern District of Ohio of the motion to remand as "moot" was simply its procedural mechanism for indicating that the motion was no longer pending on its docket. Nothing in its order addresses the merits of the issues presented by that motion. Thus, we do so now. Being duly advised, we hereby GRANT the plaintiff's motion (Dkt. 42) requesting a ruling on his motion to remand.

### 3. The doctrine of fraudulent joinder may be applied to a diverse, in-state defendant.

We next turn to the issue whether defendant Nuzzo was fraudulently joined, thereby making his citizenship irrelevant and the forum defendant rule inapplicable. We begin by addressing whether the doctrine of fraudulent joinder, which typically is invoked with respect to a non-diverse party, is applicable in the "forum defendant rule" setting. In other words, we must determine whether a diverse, in-state defendant can be deemed to have been fraudulently joined. The analysis begins with the forum defendant rule itself. Under 28 U.S.C § 1441(b), an action otherwise removable on diversity grounds "may not be removed if any of the parties in interest

8

properly joined and served as defendants is a citizen of the State in which such action is brought."

As noted above, most fraudulent joinder cases involve a defendant who is non-diverse to the plaintiff and who the removing parties contend was joined to defeat diversity. One of our sister courts within the Seventh Circuit has restricted the doctrine of fraudulent joinder to this situation and refused to apply it in the context of a diverse, in-state defendant. "The doctrine of fraudulent joinder is limited . . . to the context of determining whether complete diversity exists for the *purpose of diversity jurisdiction*. It does not permit a court to disregard the citizenship of a defendant for *purposes of avoiding the forum defendant rule* where complete diversity exists." *Davenport v. Toyota Motor Sales*, 2009 WL 4923994 at *3 (S.D. Ill. Dec. 14, 2009) (emphasis in original).

Our analysis does not bring us to that conclusion. In our view, the holding in *Davenport* is inconsistent with decisions of both the Supreme Court and the Seventh Circuit. In *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92 (1921), the Supreme Court ruled that a "controversy between citizens of different states and involving the requisite jurisdictional amount, is one which may be removed from a state court into the District Court of the United States by the defendant," and "this right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." *Id.* at 97. In *Poulos v. Naas Foods, Inc.*, 959 F.2d 69 (7th Cir. 1992), the Seventh Circuit described fraudulent joinder as applicable to a case in which a plaintiff  brings suit against an out-of-state defendant and an in-state defendant, noting that the policy underlying removal is implicated "when the insubstantiality of the claim against the in-state defendant makes it easy to give judgment . . . against the out-of-state defendant while sparing the in-state defendant." *Id.* at 73. Though *Poulos* involved the

alleged fraudulent joinder of a non-diverse defendant, we conclude that the rationale of the Seventh Circuit applies equally to a fraudulently joined forum defendant.

We can identify no principled basis for refusing to apply the principles of fraudulent joinder to a defendant whose presence prevents a federal court from exercising jurisdiction but against whom no colorable cause of action has been pled.  The Eastern District of Pennsylvania has perhaps put it best:  "The fraudulent joinder line of cases distills to a simple principle: a court cannot permit a plaintiff to join a straw-man defendant solely to deprive removal-eligible defendants of a federal forum to which they are otherwise entitled."  *Yellen v. Teledyne Cont'l Motors, Inc.*, 832 F. Supp. 2d 490, 503 (E.D. Pa. 2011).  *See also Wecker v. National Enameling & Stamping Co.,* 204 U.S. 176, 186 (1907) ("Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right.").

Having determined that the doctrine of fraudulent joinder is applicable to a defendant such as Mr. Nuzzo, who is diverse from the plaintiff but a citizen of the forum state in which this case originally was filed,  we now turn to the main issue before us: whether defendant Nuzzo was in fact fraudulently joined.

**4.  Defendant Nuzzo was, indeed, fraudulently joined.**

"To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999).  But if there is a "colorable basis" for the claim, with the district court resolving "all disputed questions of fact and ambiguities in the controlling . . . state law in favor of the non removing party," the court must remand.  *Id.* (internal quotations and citations omitted). The Seventh Circuit defines fraudulent

joinder using slightly different language, but the standard is largely the same.[5]  To establish fraudulent joinder there must be no "reasonable possibility that a state court would rule against [that] defendant." *Poulos*, 959 F.2d at 73. "The defendant must show that, after resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant." *Id.* (emphasis in original).

Despite the fact that one circuit speaks of a "colorable basis" for a claim while the other requires a "reasonable possibility" of individual liability on the claim, both circuits direct that all questions of fact and governing law be resolved in favor of the plaintiff.  Hence, the question of fraudulent joinder can be decided consistently under both Sixth Circuit or Seventh Circuit precedent.  Thus, we ask:  Is there any "reasonable possibility" of individual liability or any "colorable basis" for a claim against Mr. Nuzzo.  In attempting to establish that there is not, defendants must shoulder a "heavy burden,"  *Poulos*, 959 F.2d at 73,  establishing "no reasonable prospect of success even when all issues of fact and ambiguities of law are resolved in the plaintiff's favor." *Antonio v. Wal-Mart*, 2007 WL 2884371 at *3 (S.D. Ind. Sept. 27, 2007).  *See also Luri v. National Union Fire Ins. Co.,* 2010 WL 1254282 at *3 (N.D. Ohio March 24, 2010) (defendant asserting fraudulent joinder has "heavy burden" to show that the plaintiff does not have a colorable claim against the purportedly fraudulently joined party).

The defendants here rely on Indiana substantive law in arguing that there is no reasonable possibility of individual liability or colorable basis for a claim against Mr. Nuzzo.  Morris, on the other hand,  cites Ohio substantive law to show that his claim against Mr. Nuzzo is colorable.

---

[5]      Again, the court cites both Sixth and Seventh Circuit law, even though generally the law of the transferee court governs on federal issues.  *McMasters,* 260 F.3d at 819.

Importantly, neither side disputes the other's analysis of these principles, only whether Indiana or Ohio law applies. Our assessment corresponds with Morris's -- that the claims against Mr. Nuzzo *are* colorable and potentially successful under Ohio substantive law. S*ee Wiseman v. Universal Underwriters Ins. Co.,* 412 F. Supp. 2d 801 (S.D. Ohio 2005). Thus, *if* Ohio substantive law applies, then Mr. Nuzzo is not fraudulently joined and we must remand the case.

That said, we also agree with defendants in holding that the claims against Mr. Nuzzo *are not* colorable and there is no reasonable possibility of their success under Indiana substantive law. *See DiMizio v. Romo,* 756 N.E.2d 1018, 1021-22 (Ind. Ct. App. 2001) (addressing contractual privity requirement and finding frivolous breach of contract claim brought against a person not a party to the contract); *Schwartz v. State Farm Mut. Auto. Ins. Co.,* 174 F.3d 875, 878-79 (7th Cir. 1999) (applying Indiana law) (cause of action that insurance claim was denied in bad faith may be brought only against insurance company and not an individual employee of the insurer that handled the claim).[6] Under Indiana law: (a) contract claims are not actionable against a person who was not a contracting party and Nuzzo was not a party to the insurance contract, and (b) bad faith claims in insurance cases can be asserted only against the insurance company itself, not the individual employees of the company. Thus, *if* Indiana substantive law applies, we must remand the case.

Morris contends that this court *must* apply Ohio substantive law because his complaint asserts that Ohio substantive law applies and because he filed the case in Ohio. Those arguments

---

[6]     The court further explained: "As the Indiana Supreme Court made clear when it first recognized the tort of bad faith denial of insurance claims, the duty arises from the 'unique character of the insurance contract' itself. *Erie Ins. v. Hickman,* 622 N.E.2d 515, 518 (Ind. 1993). A special relationship exists 'between an insurer and insured because they are in privity of contract.' *Id.* Yet here, both parties admit that, as an individual, [the individual insurance adjuster] is not in privity with the [insureds] based on their insurance policy. Thus, the employee did not owe a special duty to the plaintiffs on which the bad faith tort could be based." *Schwartz,* 174 F.3d at 879.

are unavailing.  However, because Morris filed the case in Ohio, it is appropriate to apply Ohio's *choice of law* rules in determining which state's substantive law applies to the claims against Mr. Nuzzo.  *See Edwardsville Nat'l Bank and Trust Co. v. Marion Laboratories, Inc.,* 808 F.2d 648, 650 (7th Cir. 1987) (Section 1404(a) transfer "changes venue but not law; the transferee court must apply the transferor's choice-of-law rules").[7]  So, we look next to see what Ohio's choice of law rules dictate.

For contract claims, Ohio applies the law of the state that has "the most significant relationship to the transaction and the parties," considering the place the contract was negotiated, made, and performed, the location of the subject matter of the contract, and the domicile or residence of the contracting parties.  *Ohayon v. Safeco Ins. Co.*, 747 N.E.2d 206, 209 (Ohio 2001). *See also Miller v. State Farm Mut. Auto. Ins. Co.,* 87 F.3d 822, 825 (6th Cir. 1996) (under Ohio's choice of law rules, if the action sounds in contract, the law of the state where the contract was made presumptively controls). For tort claims, Ohio applies the law of the place of injury "unless another jurisdiction has a more significant relationship to the lawsuit." *Morgan v. Biro Mfg. Co.,* 474 N.E.2d 286, 289 (Ohio 1984); *Miller,* 87 F.3d at 824 (under Ohio's choice of law rules, if action sounds in tort, the law of the state where the injury occurred presumptively controls).  In examining such relationships to the claim, the court consider factors such as: "(1) the place of the injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties;" and "(4) the place where the relationship between the parties, if any, is located." *Morgan,* 474 N.E.2d at 289.

---

[7]        The Northern District of Ohio, the transferor court, would have applied Ohio's choice of law rules because, in diversity cases, a "district court is bound to apply the law of the forum state," including its choice of law rules.  *U.S. Fire Ins. Co. v. Beltmann North Amer. Co.,* 883 F.2d 564, 565-66 (7th Cir. 1989) (citing *Eric R.R. v. Tompkins,* 304 U.S. 64 (1938), and *Klaxon v. Stentor Elec. Mfg.,* 313 U.S. 487, 496 (1941)).

The choice of law analysis leaves us with no doubt as to which state's substantive law applies here;  all the applicable factors point to Indiana.  Indiana clearly has the most significant relationship to the insurance contract and the parties to that contract; the contract was made in Indiana, all insured parties are Indiana citizens, and the automobile accident giving rise to claims against the policy occurred in Indiana.  As to the tort claims, Indiana was the place of the injury (both the injuries involved in the car accident and the excess verdict injury), and no other state has a more significant relationship to the lawsuit.  All the other choice-of-law factors also point to Indiana.  The conduct causing the injury (the bad faith failure to defend and settle Morris's claim against Sampson, the insured) was centered in Indiana, and the domiciles and places of business of the parties favor Indiana, if indeed they favor any state:  the plaintiff is domiciled in Indiana, the insured is domiciled in Indiana, and, while defendant Nuzzo is domiciled in Ohio, Mid-Century regularly transacts the business of insurance in Indiana and did so here.

Thus we conclude that under Ohio's choice-of-law rules, Indiana's substantive law applies to Morris's claims against Mr. Nuzzo.  Therefore, as explained above, under Indiana law, Morris's claims are not colorable and there is no reasonable possibility of their success on the merits.  Accordingly,  we hold that Mr. Nuzzo was fraudulently joined and his citizenship must now properly be disregarded.  His joinder as a party does not, and did not,  prevent defendants from properly removing this lawsuit to federal court.

## Conclusion

For the foregoing reasons, we hold that Morris's motion to remand was not mooted by the Northern District of Ohio's transfer order;  we therefore GRANT Morris's motion (Dkt. 42) seeking a ruling on his motion to remand but DENY his request to remand to Ohio state court. We also hold that defendant Salvatore Nuzzo was fraudulently joined and therefore dismiss all

14

claims against defendant Nuzzo with prejudice.  Morris's motion for reconsideration (Dkt. 25) filed in the Northern District of Ohio following that court's transfer order is DENIED as moot.[8]

       IT IS SO ORDERED.

Date:  __08/24/2012_____

_Sarah Evans Barker_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:  All ECF-registered counsel of record

---

[8] That motion asked the Northern District of Ohio to revisit its decisions denying the remand motion and transferring the case to this court or to stay the transfer and permit Morris to appeal the ruling.